IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:19-CV-00350-KDB

| | |
|---|---|
| GREGORY LEMIEUX,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY<br><br>    Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Gregory Lemieux's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 15), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision terminating his disability insurance benefits.

Having reviewed and considered the written arguments, administrative record and applicable authority, and for the reasons set forth below, the Court finds this matter should be remanded to allow the ALJ to reconsider and further explain his decision that the claimant is not entitled to the disability insurance benefits previously awarded to him because he is no longer disabled. Accordingly, the Court will **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgement, **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

**I. PROCEDURAL BACKGROUND**

Plaintiff Gregory Lemieux, born March 25, 1961, filed an application for Disability Insurance Benefits and Supplemental Security Income on January 12, 2012 for disability beginning

1

January 5, 2011. In a decision dated March 22, 2012, the state agency concluded that the severity of his impairments met the requirements of Listing 12.04 and found him disabled, beginning January 5, 2011, pursuant to Titles II and XVI of the Social Security Act (the "Act") (Tr. 88-94, 96-103, 124). On August 15, 2016, the state agency found that Lemieux's impairments no longer met the requirements of Listing 12.04 and that he had medically improved such that he could perform a limited range of unskilled work as of August 12, 2016 (Tr. 124). This determination was upheld upon reconsideration (Tr. 124). A hearing was held before Administrative Law Judge Charles R. Howard ("the ALJ") on September 21, 2017 and, on November 13, 2017, the ALJ issued a decision upholding the termination of benefits (Tr. 65-86, 124-35). On August 29, 2018, the Appeals Council granted review of the ALJ's decision and remanded the case for the ALJ to conduct further proceedings (Tr. 143-45).

On remand, the ALJ held a second hearing on January 10, 2019 and, on February 22, 2019, the ALJ issued a decision finding that Plaintiff was no longer disabled (Tr. 15-32, 40-57). On October 21, 2019, the Appeals Council denied review (Tr. 1-3), thereby rendering the ALJ's decision the final decision of the Commissioner. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and this matter is ripe for decision.

## II. THE COMMISSIONER'S DECISION

In evaluating whether Plaintiff's social security benefits were properly terminated, the ALJ applied the eight-step sequential evaluation process found in the Act's regulations. *See* 20 C.F.R. § 404.1594(f). At the outset, the ALJ noted that Plaintiff's most recent favorable decision ("comparison point decision" or CPD) was a determination, dated March 22, 2012, that Plaintiff was disabled and met Listing 12.04 [then called "affective disorders," now called "depressive, bipolar, and related disorders"] (Tr. 17). At the time of the CPD, Plaintiff had the following

2

medically determinable impairments: affective disorder, anxiety, avoidant and schizotypal personality traits (Tr. 17).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") through the date of his decision, (Tr. 17), so that was not a bar to a finding that he remains disabled. *See* 20 C.F.R. § 404.1594(f)(1). When SGA is not an issue, at step two, the claimant's impairment is compared to those in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, App. 1; if the impairment meets or equals a Listing, disability is found to continue. 20 C.F.R. § 404.1594(f)(2). The ALJ found that since August 12, 2016, Plaintiff had the following medically determinable impairments: bipolar disorder, anxiety disorder, personality disorder, Tourette's disorder, plantar fascitis, neck spasm, high cholesterol, obesity, and a thyroid impairment (Tr. 17), but that Plaintiff's impairments did not meet or equal a Listing (Tr. 17-19).

At step three, the ALJ determines whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). Medical improvement is defined as any decrease in medical severity of the impairment(s), as established by improvement in symptoms, signs, or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If medical improvement has occurred, the ALJ proceeds to step four; if not, the ALJ proceeds to step five.[1] 20 C.F.R. § 404.1594(f)(3). As discussed in more detail below, the ALJ concluded that medical improvement had occurred as of August 12, 2016, (Tr. 19), but did not detail the reasons for that finding nor did he specifically compare

---

[1] Step five deals with exceptions to the medical improvement requirement and is relevant when either no medical improvement has occurred (at step three), or when medical improvement has occurred, but is not related to the ability to work (at step four). 20 C.F.R. § 404.1594(f)(5). Because the ALJ found that Plaintiff had medical improvement, and that such medical improvement related to his ability to work (Tr. 19), the ALJ omitted step five.

3

"symptoms, signs, or laboratory findings" from 2012, when Plaintiff was found to be disabled, with analogous evidence from or after 2016, when the state agency determined that he was no longer disabled. However, having found "medical improvement," the ALJ proceeded to step four.

At step four, the ALJ determines whether the claimant's medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If the claimant's medical improvement is related to the ability to work, the ALJ proceeds to step six; otherwise, the ALJ proceeds to step five. 20 C.F.R. § 404.1594(f)(4). Here, the ALJ found that Plaintiff's medical improvement was related to his ability to work, because Plaintiff no longer met Listing 12.04 (Tr. 19). Therefore, the ALJ proceeded to step six.

At step six, the ALJ determines whether the claimant's current impairments are severe within the meaning of the regulations, i.e. they cause significant limitation in the claimant's ability to do basic work activities. The ALJ found that Plaintiff's impairments continued to be severe (Tr. 19). Specifically, the ALJ decided that Plaintiff's bipolar disorder, agoraphobia, personality disorder, and Tourette's disorder, in combination, were severe, as they cause more than minimal limitation in Plaintiff's ability to perform basic work activities (Tr. 19).

Prior to step seven, the ALJ determined the Plaintiff's "residual functional capacity" (RFC) based on his current severe impairments to decide if he could perform his past relevant work ("PRW") despite the impairments, which would of course mark the end of his disability. *See* 20 C.F.R. § 404.1594(f)(7)-(8). The ALJ described Plaintiff's RFC as follows:

> Based on the impairments present since August 12, 2016, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform and maintain concentration for simple routine repetitive tasks; he can adapt to gradual and infrequent changes in a work setting; he can perform work that does not require interaction with the public; and he is unable to meet fast pace, high production demands in a work setting.

(Tr. 21). Then, at step seven, the ALJ found that Plaintiff was unable to return to his previous work as a pizza delivery driver (unskilled work with light exertion) and a quality assurance analyst (skilled work with light exertion) (Tr. 21, 30). The ALJ, therefore, proceeded to step eight.

At step eight, the burden shifts to the Commissioner to show that the claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. *See* 20 C.F.R. § 404.1594(f)(8). Based on vocational expert ("VE") testimony, the ALJ found that there were other types of jobs that Plaintiff was able to perform, existing in significant numbers in the national economy, including industrial cleaner, laundry worker, and salvage laborer (Tr. 31, 55). The ALJ accordingly concluded that Plaintiff was no longer disabled within the meaning of the Act as of August 12, 2016 (Tr. 15, 32).

### III. LEGAL STANDARD

In Sections 405(g) and 1383(c)(3), the Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986);

*King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Indeed, the Act specifically provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as follows:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has thus long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

In his appeal to this Court, Mr. Lemieux makes two arguments in support of his claim that the ALJ's decision is not based on substantial evidence. First, he argues that in determining whether he had "medically improved" the ALJ was required by the governing regulations to compare the medical severity of his impairments when he was found to be disabled with the current medical evidence but failed to do so. Second, Plaintiff argues that the ALJ did not adequately

6

explain or support his finding that since 2016 Plaintiff could work with the limitations reflected in his new RFP. As discussed below, the Court finds that the regulations require the ALJ to do more than simply conclude, without any comparison of specific medical findings, that there has been a sufficient "medical improvement" to warrant the potential termination of disability benefits that have already been awarded by the Commissioner. Therefore, this case will be remanded to the Commissioner to hold a new hearing in compliance with the regulations.[2]

The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling...." 42 U.S.C.A. § 423(f). Benefits may be discontinued if (1) there is substantial evidence to support a finding of medical improvement related to an individual's ability to work and (2) the individual is now able to engage in substantial gainful activity. *Id.*; *see also* 20 C.F.R. § 404.1594(a).While the Fourth Circuit has not directly addressed this issue, other circuits have ruled on the scope of this Court's review of the termination of a person's benefits. *See Taylor v. Heckler,* 742 F.2d 253, 256 (5th Cir.1984); *Buckley v. Heckler,* 739 F.2d 1047, 1048–49 (5th Cir.1984); *Rice v. Chater,* 86 F.3d 1, 2 (1st Cir.1996); *Spearman v. Comm'r of Soc. Sec.,* 84 F. Supp. 3d 531, 534–38 (N.D. Miss. 2015). Even though the burden of proving disability remains on a Social Security claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has

---

[2] Having determined that the case must be remanded for a new hearing, the Court need not and does not reach Plaintiff's second argument challenging the ALJ's findings with respect to the Plaintiff's disability since 2016. At the new hearing, the ALJ can appropriately consider, *inter alia*, Plaintiff's arguments with respect to reliance on an "unsigned and undated" medical report and the alleged inconsistency between the medical opinions of the state agency doctors and the suitability of the jobs which the ALJ found that Plaintiff could perform with his limitations.

7

remain unchanged." *Id*., (citing *Buckley*, 739 F.2d at 1049), (quoting *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973)).

In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved. *Taylor,* 742 F.2d at 255. In addition, the Commissioner must weigh the facts which formed the basis for the prior determination of disability with "the [Commissioner]'s new evidence and any additional evidence submitted by the claimant." *Id.*

Section 404.1594 (c)(1) of the agency regulations define "medical improvement" as

> (1) Medical improvement. Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and **is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)**.

20 C.F.R. § 404.1594(c)(1) (emphasis added); *see Loza v. Apfel,* 219 F.3d 378, 393, 395 (5th Cir. 2000). Failure to seek treatment is not evidence of medical improvement. *See Rice,* 86 F.3d at 2. Also, the regulations require actual physical improvement in a claimant's impairment, not simply an improved prognosis. *See Id.* at 3. In sum, to fairly overcome the presumption that a claimant's disability continues, the Commissioner must compare the specifics of a claimant's condition at the time of his disability with more recent findings, not just reevaluate whether the claimant is disabled based on his current condition.

The regulations make this distinction further clear in an example in an analogous provision, Section 404.1594 (d)(4)(iii):

> Example: You were previously found entitled to benefits on the basis of diabetes mellitus which the prior adjudicator believed was equivalent to the level of severity contemplated in the Listing of Impairments. The prior record shows that you had "brittle" diabetes for which you were taking insulin. Your urine was 3+ for sugar, and you alleged occasional hypoglycemic attacks caused by exertion. On review,

symptoms, signs and laboratory findings are unchanged. The current adjudicator feels, however, that your impairment clearly does not equal the severity contemplated by the listings. Error [supporting a termination in benefits] cannot be found because it would represent a substitution of current judgment for that of the prior adjudicator that your impairment equaled a listing.

20 C.F.R. § 404.1594(d)(4)(iii).

Turning to the specifics of this case, the ALJ failed to make this required "comparison" in sufficient detail for the Court to determine if it is supported by substantial evidence. The ALJ concluded, based mostly on a general reference to "conservative treatment" in the Plaintiff's treatment records, as follows:

> The medical evidence supports a finding that, by August 12, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD, as treatment records no longer document marked limitations in the claimant's mental functioning.

Tr. 19. This conclusory finding, however, leaves unanswered the more specific question posed by the regulations, which is have the "symptoms, signs or laboratory findings" associated with Plaintiff's impairments changed? For just one example, was the Plaintiff being "conservatively treated" and seeing his psychiatrist with similar frequency in 2012, when the Commissioner last determined he was disabled?[3] Accordingly, the Commissioner has failed to compare the specifics of Mr. Lemieux's condition at the time he was disabled to the period when the Commissioner contends that his disability abated. In the absence of that required comparison, the Court must remand this matter to the Commissioner for further consideration.

Finally, to be clear, by ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not forecast a decision on the merits of Mr. Lemieux's application for disability

---

[3] Plaintiff argues, among other specifics related to his condition and treatment, that he saw his psychiatrist more frequently rather than less frequently in 2016 and later. *See* Doc. 10 at pp. 9-13. The Court makes no conclusion here whether the comparison of the specifics of Plaintiff's condition and treatment establish "medical improvement" as of August 2016, leaving that analysis in the first instance to the Commissioner when the case is reheard.

9

benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (alternation in original) (emphasis omitted) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990)).

## V. ORDER

Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**; Defendant's Motion for Summary Judgment (Doc. No. 15) is **DENIED**; and the Commissioner's decision is **REVERSED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[4]

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 25, 2020

Kenneth D. Bell
United States District Judge

---

[4] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." *Sullivan*, 496 U.S. 617, 625 (1990).